UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT JOHNSON,

    Plaintiff,

v.                                          Case No.:  2:24-cv-166-SPC-NPM

WARDEN SNYDER *et al.*,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court are Defendants Scarpati, Hirschy, Bates, and Mathewson's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 37) and Defendant Jacob Dawson's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 39). Plaintiff Robert Johnson did not respond to either motion. Defendants Snyder, Swat, and Green have not been served, but some of the arguments raised by the other defendants apply equally to the claims against them. The Court has a duty under 28 U.S.C. §§ 1915(e)(2) and 1915A to dismiss any portion of the complaint that fails to state a claim. Accordingly, the Court has *sua sponte* reviewed the claims against Snyder, Swat, and Green in light of the arguments raised in the motions.

## Background

Johnson is a prisoner of the Florida Department of Corrections (FDOC). He sues eight FDOC officials for violations of his First and Eighth Amendment rights, conspiracy to violate those rights, and civil theft. The Court recounts the factual background as pled in Johnson's Amended Complaint, which it must take as true to decide whether the complaint states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

On the morning of September 20, 2022, an officer served Johnson breakfast on a metal tray. Johnson complained that he was prescribed a 2600 calorie diet, and that his food was supposed to be served on a Styrofoam tray for security purposes. The officer told Johnson to take the tray or not eat. Johnson asked the speak to the dorm sergeant. Sergeant Green approached, heard Johnson's complaints, and responded that he could take the tray or not eat. Johnson took the tray, and Green said, "If this happens tomorrow, what are you gonna do about it, write a grievance? No one cares about your grievances. In fact, I got something for you since you want to cry about everything." (Doc. 30 at 9). Green then left.

While Johnson was eating, Green returned to collect trays and bed sheets because it was sheet exchange day. He collected the items from the other inmates, but he refused to take Johnson's tray and sheets. No one else arrived to collect Johnson's tray and sheets, so he set them by the cell door.

2

Later that morning, Officer Mathewson approached the back window of Johnson's cell, and said, "Hey Inmate Johnson, the rat, I heard you been giving Green a hard time this morning. We got something special for you today since you like writing everybody up. I hope you like how hot gas feels." (*Id.* at 11). Mathewson then entered the wing, announced an inspection, and asked Johnson why he had a tray and sheets in his cell. Johnson said Green refused to collect them, and Mathewson responded, "Oh yeah, I knew that, now submit to hand restraints for a cell search." (*Id.* at 12).

Johnson submitted to hand restraints, and Mathewson escorted him to a shower and conducted a strip search. Mathewson returned Johnson's boxers said he would be on property restriction and management meal for 72 hours. Mathewson then removed Johnson's property from his cell—some of it was never returned.

Between 10:00 and 11:00 a.m., Warden Snyder, Assistant Warden Dawson, Colonel Scarpati, and other high ranking prison officials conducted a walkthrough inspection of the wing. Johnson stood at his cell door hoping to speak with the warden. Johnson tried to stop the warden as he approached, but Snyder and the others ignored him. Lieutenant Bates ordered Johnson to get away from the cell door and stand on the footprints. When Johnson tried to explain why he wanted to speak to the warden, Bates said, "That's what

3

happens when you write everybody up. In fact, I'll be back with the gas too, you're getting sprayed today, we're sick of your grievances!" (*Id.* at 15).

Shortly thereafter, Mathewson approached the rear window of Johnson's cell again and threated to gas him every day until he stopped writing grievances. Mathewson then began serving lunch in the wing. He refused to give Johnson a drink and only served him half the management meal.

An hour or two after lunch, Lieutenant Hirschy approached Johnson's cell door with Mathewson—who was filming with a handheld camera—Bates, Sergeant Swat, and several other officers. Hirschy—reading from a piece of paper—falsely accused Johnson of disruptive behavior like yelling and kicking the cell door. Johnson denied the allegations. Hirschy said chemical agents would be used if Johnson did not cease his disruptive behavior. Minutes later, Hirschy and Bates ordered one of the officers to spray Johnson with chemical agents. Johnson stood in the middle of his cell with his back turned while the officer sprayed three bursts. The chemicals irritated Johnson's skin and made it difficult to see and breathe.

A few minutes later, Johnson was handcuffed and escorted to a shower, where he took a cold-water decontamination shower. The water did not completely remove the chemicals from Johnson's body, and his eyes and skin continued to burn. Johnson was then taken to a medical room for a post-use-of-force examination. Johnson returned to his cell, where he continued

4

flushing his eyes with cold water. He was not able to completely restore his vision, and he continued having eye problems for months. On September 30, 2022, a nurse prescribed Johnson medicated eye drops, but they did not heal his irritated eyes and vision. Johnson has continued to request medical care.

Johnson claims he has suffered chronic eye damage, a loss of energy and weight due to the management meal, mental anguish, pain and suffering, litigation expenses, loss of personal property, and medical and mental health expenses. He seeks declaratory and injunctive relief and compensatory, punitive, and nominal damages.

## Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant

5

has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Johnson filed this action under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

Johnson is representing himself in this action. Courts hold the pleadings of *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But courts do not have a duty to "re-write" a *pro se* litigant's complaint to find a claim. *See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 327 (11th Cir. 2007).

## Discussion

Johnson's Amended Complaint asserts seven counts: (1) retaliation; (2) excessive force; (3) failure to train, supervise, and discipline; (4) failure to

intervene; (5) conspiracy; (6) civil theft; (7) pain and suffering; and (8) mental anguish. The defendants argue Johnson failed to exhaust administrative remedies for certain claims, challenge the sufficiency of his pleading, raise qualified and sovereign immunity, characterize the Amended Complaint as a shotgun pleading, and raise a pre-suit requirement to the civil theft claim. The Court notes at the outset that pain and suffering and mental anguish are elements of damages, not causes of action. If Johnson succeeds on any of his claims, those may be elements of damages, but the Court will not treat them as independent counts.

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), before a prisoner may bring a claim challenging the conditions of his confinement, he must exhaust available administrative remedies. 42 U.S.C. § 1997e. The purpose of administrative exhaustion "is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (cleaned up). Section 1997e(a) does not require dismissal of every defendant not named in a prisoner's grievances, but it does require "that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000).

The Eleventh Circuit has established a two-step process for deciding a motion to dismiss for failure to exhaust administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed…
>
> If the complaint is not subject to dismissal at the first step, where plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside,* 541 F.3d 1077, 1082-83 (11th Cir. 2008).

The defendants' support their account of Johnson's grievance history with evidence, and Johnson did not respond to dispute it, so there are no factual disputes relating to exhaustion here. Johnson filed seven grievances—identified below by their appeal numbers—about the events that occurred on September 20, 2022:

- Appeal No. 22-6-28946: Hirschy, Bates, and Mathewson conspired to gas Johnson in retaliation for filing complaints against prison officials

- Appeal No. 22-6-31630: Green falsely accused Johnson of refusing to hand over his breakfast tray, then put Johnson on management meal

8

- Appeal No. 22-6-32495: Mathewson and Green conspired to put Johnson on property restriction and management meal

- Appeal No. 22-6-34112: Bates conspired with other officers to gas Johnson as retaliation

- Appeal No. 22-6-34125: Mathewson threatened to gas Johnson daily until he stopped filing grievances and served Johnson half a management meal without a drink

- Appeal No. 22-6-34739: Green refused to collect breakfast tray and sheets as a pretext to put Johnson on management meal

- Appeal No. 22-6-34740: duplicate of 22-6-34739

The defendants argue the following claims should be dismissed for failure to exhaust administrative remedies: all counts against Scarpati, Dawson, and Hirschy, the conspiracy claim against Bates, and the excessive-force claim against Mathewson. The Court has also considered whether Johnson exhausted his claims against Snyder, which are not materially distinguishable from his claims against Scarpati and Dawson.

In his Amended Complaint, Johnson claims Scarpati, Dawson, and Snyder failed to intervene when they heard Bates threaten to gas him and did nothing to stop him—he also asserts they failed to properly train, supervise, and discipline Bates based on the same facts.[1] While none of Johnson's

---

[1] Johnson asserts his retaliation, excessive force, and conspiracy claims against "all Defendants." Johnson exhausted those claims, but he does not allege any facts connecting Scarpati, Dawson, or Snyder to them. The Court further addresses those claims in the following sections of this opinion.

9

grievances mention Dawson, Scarpati or Snyder by name, Grievance Appeal No. 22-6-28946 references them by rank and mentions Johnson tried to talk to them during a walkthrough inspection. But the subject of that grievance was retaliation by Hirschy, Bates, and Mathewson. It did not notify FDOC officials of Johnson's claims that Dawson, Scarpati, and Snyder failed to intervene and failed to properly train, supervise, and discipline Bates. Johnson did not give the FDOC a reasonable opportunity to investigate his claims against Dawson, Scarpati, and Snyder, so those claims are unexhausted.

Grievance Appeal No. 22-6-28946 does include enough detail about Hirschy's and Mathewson's involvement in the alleged retaliatory use of force to give FDOC officials a fair opportunity to investigate further, so Johnson's claims against them are exhausted.

### B. Pleading Sufficiency

Next, the defendants seek to winnow down Johnson's counts by arguing he fails to plead facts supporting certain claims against certain defendants.

1. <u>Retaliation</u>

Johnson claims all defendants violated his First Amendment rights by putting him on property restriction and management meal, stealing and destroying his property, and using pepper spray on him as retaliation for his grievances and lawsuits against FDOC employees. Scarpati, Dawson, Hirschy, and Bates argue Johnson failed to state retaliation claims against them.

10

"[T]he First Amendment prohibits officials from retaliating against prisoners for exercising their right of free speech by filing lawsuits or grievances." *Mpaka v. Jackson Memorial Hospital*, 827 F. App'x 1007, 1010 (11th Cir. 2020). To succeed on a retaliation claim, a prisoner must prove three elements: "(1) his speech was constitutionally protected; (2) he suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Id.* (quoting *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011)). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)).

Johnson's Amended Complaint does not state any facts suggesting Dawson, Scarpati, Snyder, or Swat participated in any of the allegedly retaliatory actions, so Johnson has not stated a First Amended Complaint against them. Hirschy and Bates argue they cannot be liable for retaliation based on the allegations that they ordered another officer to spray Johnson with chemical agents "for no apparent reason other than to torture him." (Doc. 30 at 16). But elsewhere in the Amended Complaint, Johnson alleges Bates said he would gas Johnson because "we're sick of you and your grievances."

11

(*Id.* at 15). And he accuses Hirschy of providing a pretext by falsely accusing Johnson of disruptive behavior. These allegations allow the Court to reasonably infer that they personally participated in a retaliatory use of force. The Court will not dismiss the retaliation claims against Hirschy and Bates.

### 2. Excessive Force

Johnson claims all defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by maliciously and sadistically spraying him with chemical agents. Scarpati, Dawson, and Mathewson argue Johnson failed to state excessive-force claims against them.

The core judicial inquiry in an excessive-force claim is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sconiers v. Lockhart,* 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010)). A prisoner asserting an excessive force claim must establish two elements: "the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Id.* (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).

A claim satisfies the subjective element if the excessive force was "sadistically and maliciously applied for the very purpose of causing harm." *Id.* The objective component "focuses on whether the official's actions were

12

harmful enough or sufficiently serious to violate the constitution." *Id.* (cleaned up). The Eleventh Circuit has recognised that "where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement." *Thomas v. Bryant*, 614 F.3d 1288, 1311 (11th Cir. 2010).

Johnson does not allege that Dawson, Scarpati, Snyder, or Green were present when he was sprayed with chemical agents, or that they directed or otherwise participated in the use of force. And while Swat was present when the chemical agents were deployed, Johnson does not allege he personally participated. Johnson thus has not alleged facts sufficient to establish either the objective or subjective components of an excessive-force claim as to these five defendants.

On the other hand, Johnson alleges Mathewson told Johnson he would be gassed later that day because of his grievance filing, cooperated with Green to provide a pretext for property restriction and management meal, and recorded the application of chemical agents. The Court can reasonably infer from those allegations that Mathewson personally participated in the decision to spray Johnson with chemical agents as retaliation for his grievances. The Court will allow Johnson to develop his excessive-force claim against Mathewson through discovery.

13

### 3. Conspiracy

Johnson claims all defendants conspired to violate his constitutional rights by "meeting up sometime prior to, during and/or after these incidents to reach an agreement to violate" his constitutional rights. (Doc. 30 at 7). Johnson must allege three elements to establish a conspiracy claim under § 1983: "(1) a violation of his federal rights; (2) an agreement among the Defendants to violate such a right; and (3) an underlying actionable wrong." *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1148 (N.D. Ga. 2016) (cleaned up).

The defendants raise the intracorporate conspiracy doctrine, which holds that employees of the same corporation cannot conspire amongst themselves because their "acts are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Grider v. Cty. of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010). The doctrine applies to public entities and their employees in the context of a § 1983 conspiracy claim. *Id.* All of the defendants were FDOC employees acting within the scope of their employment. Thus, Johnson cannot state a conspiracy claim against them. The Court will dismiss the conspiracy count against all defendants.

### 4. Civil Theft

Johnson asserts a state civil-theft claim against Mathewson for "taking, damaging and disposing of some of Plaintiff's personal property." (Doc. 30 at 7). To prevail on a civil-theft claim under Florida law, a "plaintiff must prove that the defendant (1) knowingly; (2) obtained or used, or endeavored to obtain or use, the plaintiff's property; (3) with felonious intent; (4) to deprive plaintiff of its right to or a benefit from the property or appropriate the property to the defendant's own use or to the use of a person not entitled to the use of the property." *Hawthorne v. Lyons*, 192 So. 3d 1279, 1280 (1st Dist. Ct. App. Fla. 2016).

Mathewson argues Johnson failed to plead facts that could establish felonious intent. The Court agrees. Johnson merely alleged that Mathewson removed Johnson's items from his cell after Johnson was placed on property restriction, and that Johnson did not get some of the items back. That is not enough to support an inference of felonious intent. And while Florida law allows a plaintiff to generally allege felonious intent, Johnson did not do so. *See Batista v. Rodriguez*, 388 So. 3d 1098, 1102 (3d Dist. Ct. App. Fla. 2024). The Court will dismiss Johnson's civil-theft claim.

### C. Immunities

1. <u>Eleventh Amendment Immunity</u>

Johnson sues all defendants in both their individual and official capacities. The defendants argue the Eleventh Amendment bars Johnson from suing them in their official capacities. The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Absent an abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court. *See Edelman v. Jordan,* 415 U.S. 651, 662 (1974).

"When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Edelman,* 415 U.S. at 663. "Thus, the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* Congress has not abrogated Florida's immunity and Florida has not waived its Eleventh Amendment immunity. *See Carr v. City of Florence,* 916 F.2d 1521, 1525 (11th Cir. 1990). Consequently, Johnson cannot sue the defendants for

16

monetary damages in their capacity as state officials, and the Court will dismiss those claims.

2. Qualified Immunity

The defendants argue the doctrine of qualified immunity protects them from individual liability. "Qualified immunity protects government officials from individual liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Snorton v. Owens*, 808 F. App'x 814, 820 (11th Cir. 2020). An official invoking qualified immunity must first show he was acting within the scope of his discretionary authority. The burden then shifts to the plaintiff to show: (1) the official violated a federal statutory or constitutional right; and (2) the unlawfulness of the official's conduct was clearly established at the time of the alleged violation. *Id.* at 820-21.

"A federal right is 'clearly established' when 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful.'" *Anderson v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Wesby*, 132 S. Ct. at 589 (internal quotations omitted). To show that a legal principle is clearly established, a plaintiff must produce precedent "clear enough that every reasonable official

17

would interpret it to establish the particular rule the plaintiff seeks to apply."
*Id.*

There is no question that the defendants were acting within the scope of their discretionary authority when Johnson's claims arose. Johnson's claims survive only if the defendants' alleged conduct violated clearly established federal law. The only counts that have survived this far into the Court's analysis are retaliation and excessive-force claims against Hirschy, Bates, Swat, Green, and Mathewson. There is no shortage of precedence applicable to those claims.

Supreme Court cases like *Farmer v. Brennan*, 511 U.S. 825 (1994) and *Wilkins v. Gaddy*, 559 U.S. 34 (2010) show the Eighth Amendment's prohibition of excessive force in the prison context is clearly established. And more specifically, the Eleventh Circuit has recognized that the non-spontaneous use of chemical agents on inmates can violate the Eighth Amendment when the inmate is not presenting a threat of immediate harm to himself or others. *Thomas*, 614 F.3d 1288, 1306-17 (11th Cir. 2010). Likewise, the Eleventh Circuit has held that a retaliatory search of an inmate's cell and the destruction of his possessions and the retaliatory use of chemical agents can support a First Amendment retaliation claim. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (cell search and destruction of property); *Dimanche v. Brown*, 783 F.3d 1204, 1214 (11th Cir. 2015) (chemical agents).

Johnson's Amended Complaint adequately alleges that Hirschy, Bates, Swat, Green, and Mathewson violated Johnson's well-established First and Eighth Amendment rights. Thus, they are not entitled to dismissal based on qualified immunity.

### D. Shotgun Pleading

Finally, the defendants argue Johnson's Amended Complaint is a shotgun pleading—that is, a complaint that fails to give the defendants fair notice of the claims a plaintiff brings against them. *See Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1321-24 (11th Cir. 2015). The Court disagrees. The complaint includes specific factual allegations against each defendant, and the list of counts clarifies what alleged conduct supports each claim. The defendants have fair notice of the claims brought against them.

Accordingly, it is now

**ORDERED:**

Defendants Scarpati, Hirschy, Bates, and Mathewson's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 37) is **GRANTED in part and DENIED in part** and Defendant Jacob Dawson's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 39) is **GRANTED**.

1. Johnson's claims against Scarpati, Dawson, Snyder, and Swat, excessive-force claim against Green, and civil-theft claim against Mathewson are **dismissed without prejudice**.

2. Johnson's conspiracy claim against all defendants and official-capacity claims for monetary damages against all defendants are **DISMISSED with prejudice**.

3. Hirschy, Bates, and Mathewson must file an answer to the Amended Complaint by May 9, 2025.

**DONE** and **ORDERED** in Fort Myers, Florida on April 24, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record